Good morning. May it please the court, Becky James on behalf of the plaintiffs and appellants Shrokh Mireskandari and Paul Baxendale-Walker. I'd like to reserve three minutes for rebuttal. In this case, this court is being asked to decide whether foreign individuals, not heads of state or even government officials who commit torts and even crimes against U.S. You said not government officials. Aren't members of the Solicitor Regulation Authority government officials? No, not really. In fact, this Court already held that the SRA is an independent body. It's independent. The only reason that they found foreign sovereign immunity to apply to it in the previous case was because they held that those, that they were acting in a public act, engaging in a public activity in furtherance of the sovereign. But they are independent. Isn't the admission of Solicitors and Barristers in the United Kingdom a public function? It is, Your Honor, but they are not. These are not, I guess, to distinguish, this is not like a defense minister. These are not government officials in the sense of direct employees of the government or certainly nothing like the defense minister in the Dogan case, for example. This is an administrative body that may be aligned with, you know, and have authority to form the government. Can one legally practice as a solicitor in the United Kingdom and not be on the role of solicitors? No. And to do so without being on the role of solicitors is to incur, perhaps, in criminal liability? I'm not sure about the criminal aspect, but certainly they can be, they cannot practice. And certainly, so I think what Your Honor is getting at is that there is a governmental connection, but that's not enough. I mean, it's not enough in this case for these officials to say... Do you have any cases that tell us what governmental connection is sufficient in order to invoke common law for an official immunity? Well, the case is very thin in this area, as I'm sure the Court is aware. There are very few cases in it. I do remember the Dogan case because I wrote it. Yes, of course. Right. And this is a far cry from Dogan. I mean, this is just, you know, that, in that case, it was a clear connection between the sovereign and the sovereign's interest and the action of the defense minister. And the defense minister was clearly authorized to engage in military conduct, which is what happened there. In this case, again, I want to bring the Court back to not just status, but conduct. This is conduct-based immunity. This is foreign official common law immunity is conduct-based. So it's not enough for them to say, even, we can assume, we can assume, okay, SRA's government, they are employees of the government. That does not, by itself, entitle them to common law immunity. It has to be that their conduct is subject to immunity. Why don't we take a couple of examples here? Defendants Main and Leath. Yes. Weren't they acting as investigators on behalf of the agency? So they claim. I mean, we don't have anything. Well, that's what's alleged, and that's the way it was alleged in the complaint. That's what the complaint alleged, that they were acting on behalf. Right. They were acting, yes. They were acting as investigators. So that's what they, that's what they purported to be doing. But, but that's not all they were doing. I mean, they were bribing and threatening witnesses. And so the question is, is, was that authorized? It's not enough, again, just to say, well, they were acting on behalf, even if they were acting on behalf of the SRA, in doing so, did the sovereign, did the U.K. actually authorize them to engage in the conduct at issue here, which is bribing, bribery, threats, fraud? Were, did the U.K. really authorize them to commit crimes, to falsify the reasons why they came into the U.S., and not to register? And if they were actually acting on behalf of a foreign government, if that's what they were doing, then they were required to register with the Attorney General under 18 U.S.C. 951. But they didn't do that. So was that, was that with the permission of the U.K.? Did the U.K. say, yeah, just go ahead and go on over to the U.S. and investigate, and, and while you're at it, you know, bribe some witnesses and intimidate people and commit fraud, and don't bother registering like you're supposed to under that pesky statute. Did the U.K. really do that? Pretty hard to believe. And certainly, there's no evidence that they did. Again, unlike in Dogan, where there was an express ratification by the foreign sovereign of the conduct. How about, how about Middleton and Townsend? Middleton and Townsend? Well, I mean, they are higher ups in the SRA, but all they are doing What's their conduct? Their conduct, well, I mean, again, I think that to the extent that Maine certainly, I think it was Maine, to the extent that they were acting at their direction, then they are pulled into this. I mean, the primary conduct in the U.S., of course, was occurring through Maine and Lease. But to the extent that the, that Middleton and Townsend were the ones involved in the agenda and setting that agenda, they are involved. But again, that's not the sovereign. These are individuals. And where, where is the sovereign? I thought Middleton and Townsend was, the complaint alleges that they were basically employees of the, what's it called, the L, the Lund, the solicitor organization. Right. But that doesn't make them the sovereign. I mean, I still. But it makes a closer connection. Maybe they're a little higher up. They're higher up, but it's still, it would have to be the state would still have to come in and say, yes, they are authorized. Yes, we ratify this conduct. This is, this was conduct that was authorized and ratified by our government. And please, yes, we want immunity. And the reason for that. What about Hagerty? What did he do? What's his conduct? Hagerty? Hagerty was the supposedly independent member of the, of the tribunal. And again, all of these people worked together, which is what's alleged in the complaint, that in a single, singular enterprise and a conspiracy, so they conspired together, they're responsible for one another's conduct, all with the agenda. And the agenda behind this was one of fundamental unfairness. This was a sham investigation, born not at the behest of the UK government, but really the behest of the Daily Mail, a notoriously racist tabloid. And the agenda of this investigation was retaliation for what particularly Mr. Miroskandari did in calling out the SRA and other individuals in the UK for racism. This was his reward for that work. And that's what this was really about. That's what all of these individuals were involved in. So if, if the government of the United Kingdom wants to condone that activity and condone the improper activity, portions of that activity that occurred here in the U.S. against a U.S. citizen, then they need to say so. And they have not said so. One of the reasons it's so important to have these factors, to have the ratification and to have the State Department of our country weigh in and request sovereign immunity, or in this case common law immunity, is because this is fundamentally an issue of the executive. It's fundamentally an issue of sovereign relations. That's what this is born of. This is not a doctrine that says it's just okay, we just think it's okay for someone from a foreign country to come over here and do whatever they want. It is, and call it, you know, in the name of their government. In fact, we have a law against that. At least without notice. But what it really is, is about maintaining the relationships between the sovereigns. And when the sovereigns themselves, the governments of the sovereigns, have not weighed in, it's not appropriate for this Court to say, oh, we're going to find immunity. And again, I have to come back to Dogen, which is... Is your position that absent a State Department request for sovereign immunity cannot be found by this Court? Well, I mean, certainly without either one. I mean, you've got neither ratification from... I don't think you answered my question. Is that your position? Without State Department action, we cannot find sovereign immunity? I'm not sure there's a... Yeah. Well, I think without... I guess what I was going to say is... Is it yes or no, madam? Maybe not necessarily. I'm not sure the Court has to go that far here. I don't think the Court has to go that far. Because in this case, we had neither one. We actually had none. In Dogen, there were basically three factors that the Court identified. The foreign official acting in an official capacity where it would to enforce would be to enforce the rule of law against the State, the most substantive. But two other factors that are both absent here, one, a request by the foreign sovereign for immunity, and a State Department request. Is either one of those dispositive? Not clear at this point. But certainly without either one, we have to really question why we would be invoking sovereign immunity. What is the purpose being served where neither sovereign has asked the Court to do so? Well, it's not sovereign immunity. It's common law. Right. It's common law immunity. Common law immunity. That's it. Well, sure. But the common law immunity, does it rise from the same sorts of principles and same sorts of rationales? Sure. And so the Foreign Sovereign Immunities Act doesn't apply because it's not the foreign State, but common law immunity is very much based on the principles of relationships between nations. But you have other claims. I don't know if you were going to address them, but there's the non-government defendant, Rahat Brahinman. Rahat Brahinman. Yes. Did you care to address the claims against him? Well, I just very briefly... The district court invoked litigation privilege on... Right. ...as to his statements that he allegedly made. Right. Right. And, Your Honor, I would say it was error-defined litigation privilege in Rahnemann's case. He was not a party to the litigation that was at issue there was, first of all, foreign litigation to the extent it's even that, the SDT proceedings. He wasn't a party or really even a witness. He was kind of an interloper in the proceeding. And his conduct was extrajudicial. He was trying to influence others, influence witnesses in the proceeding. That is not the sort of thing that is subject to litigation privilege in California. And as to the RICO claim, the Court improperly dismissed that claim, finding there were not two predicate acts, but there was clearly bribery, threats, wire fraud. Against Rahnemann? Rahnemann. Rahnemann. Right. Well, he was himself the recipient of the bribe. The Court fell well, said that that was not a crime under Virginia law, but certainly to the extent you accept the bribe and then act upon it, the statute, the statutory language, as we said in our brief, does support my implication that that would be punishable as well. Certainly the threats, the witness tampering do constitute predicate acts. So it was certainly premature to dismiss the case against Rahnemann, both on litigation privilege and on the merits. I am down to three minutes. And the ---- Can I ask you one last question? Yes. If I'm not mistaken, you appealed the district court's denial of your motion for an indicated sentence. All he said was I wouldn't entertain your motion, basically, the bottom line. How is that even appealable? Well, Your Honor, it's actually the denial ---- He didn't deny the ---- he couldn't. No, he couldn't. He couldn't deny a Rule 60b because he didn't have jurisdiction. Actually, I think he can deny it. He can't grant it. He just couldn't grant it. But he didn't deny it. He denied your motion for an indicated ruling. It perhaps should have been cast as a denial of the motion, but the bottom line is he did not grant any further relief. And I think the main point here is that the record now certainly has even more evidence that he should have, in fact, granted relief or indicated that he would to allow for the remand, given that now the evidence shows that Maine, who had sworn in declarations in court, that he had been here on three occasions. It seems like what you're saying is he abused his discretion in not indicating that he would grant the motion. And that strikes me as odd. Yeah. I think the way it really is supposed to work is that the court does have jurisdiction to deny a post-trial motion in this situation. When there's an appeal? When there's an appeal? Yes. But they do not have jurisdiction to grant. The only thing they can do if they're inclined to grant is indicate ---- is give an indicative ruling. Then if he were to ---- if his indicative ruling would have said, you know, I'll grant this, but the circuit's got to remand the case back to me so that I can enter an order granting the motion. Right. That's the appropriate procedure. Right. And that's the only way that the court can grant, but the court can't deny. But you appealed his indicative, his ---- he denied. He said, I'm not ---- he explained why, but technically what he did was he denied your motion for an indicative ruling. So it never got to the underlying. I mean, it strikes me as odd. When I read that, I ---- why? Well, I think it might have been a little inartfully cast, but the gist of the ruling was to deny the relief, and I think the reasoning that he applied was, I'm not going to grant relief because, one, it wasn't newly discovered, and, two, it wouldn't have ---- you know, I don't think it matters anyway. So those were his ---- those were his reasons, and I think that was a ruling on the merits, so the court is properly before the court. I am almost out of time. All right. Well, I'll give you some more time for rebuttal. Thank you. Thank you. Good morning. Mark Brooks for Appalese, the U.K., officials, Farrington, Maine, Malcolm Least, Anthony Townsend, David Middleton, and Richard Hegarty. There is very little in dispute here that really bears directly on the issue of common law immunity. The U.K. officials all reside outside the United States. The allegations against them in the Third Amendment complaint relate to conduct in connection with an investigation and disciplinary proceedings by the Law Society of England and Wales that was conducted largely in the United Kingdom in connection with a hearing that took place in the United Kingdom. This court already has held that the Law Society enjoys foreign sovereign immunity under the Foreign Sovereign Immunities Act in connection with the very same disciplinary proceedings at issue here. The Third Amendment ---- When did we hold that? I believe it was 2015, and you remanded the case for consideration of this very issue of whether or not common law immunity would apply. To the individuals. To the individuals. Not the sovereign state. Right. The Law Society of England and Wales has now been dismissed from this case. Okay. But the third amendment complaint alleges that the U.K. officials were acting in the course and scope of their employment by the Law Society of England and Wales. Indeed, but for those allegations, the Law Society could not have been, or ought not to have been at least, sued in this case because the Law Society was sued on a theory of respondeat superior in connection with the very actions of its employees and agents that are at issue here. Moreover, if Lease and Main were not alleged to be acting in the course and scope of their employment, the only connection to this country being their conduct here in the United States, their superiors, Middleton and Townsend, ought not to have been sued if they weren't acting at Middleton and Control. It's basically a paradigm case of common law sovereign immunity. And as Judge Baez suggested with his question, there's no requirement of a statement of interest by the State Department for this court to address the issue. That's made clear by the very fact that this court already has ruled that the Law Society of England and Wales is entitled to sovereign immunity. So how do you respond to Mr. James's argument that the actions, I guess, primarily Main, is it Main? Main, yes. And Lease? Yes. That their alleged wrongdoing far exceeded, went beyond the scope of authority that was granted to them by the Law Society. Well, it seems to- By Townsend and the other fellow. It seems to me to be a bootstrap argument. One doesn't sue any official, be it an American official or a foreign official, but for an allegation of conduct that they overstepped their bounds or overstepped their authority or did something wrong. That's what they're alleging here. But the fact of the matter is that the allegations in the third amended complaint reflect the fact that whatever evidence was gathered by Lease and Main in this country was used in the disciplinary proceedings in England for the very purpose of pursuing the administrative goals of the Law Society of England and Wales, which is- Did they engage in acts of bribery to get that information in the United States? I don't believe- I believe that would be an issue for the English courts, not these courts. Yeah, I mean, look, this type of immunity, the very nature of immunity, presupposes that people who engaged in some form of wrongdoing will not be brought before the courts of the United States. I'm not admitting here that they did any of those things. I'm just saying that's- And I know you're not, but- That's what's alleged in the complaint, and that's what Ms. James- But it would be difficult to envisage me standing here to argue this issue were it not for the existence of a complaint that suggested that my clients did something wrong. In the Dogan case, the claim was that Barack had murdered Dogan. Exactly. And by the way, Judge Baird makes a good point because there are certain exceptions to common law sovereign immunity. I'm referring, of course, to Juice Kogan's, which I may well be mispronouncing. But it does suggest not only the existence of an exception, but more importantly, the limits of that exception. So maybe if they murdered somebody. Maybe. Maybe. I might feel the need to argue more strongly the Dogan case under those circumstances. But we're not there. We're not close to one of those common law exceptions. We're talking about run-of-the-mill investigatory misconduct here, shall we say. Could, is anybody, did you say you were representing Ron Nima? I am not. So there's no one here representing him? No. He's pro se, and he's back east, correct? Yes. Do you want to address the litigation privilege point? Well, I don't represent Mr. Ron Nima. It doesn't implicate my clients. But I understand, well, I should stop there. How about the indicative ruling issue? That affects your clients. It does, Your Honor. And our view is that the district court did not that motion for the reasons that are stated there. All of this, to the extent one could call this evidence at all, it was available earlier. And it would not have changed the outcome. Most importantly, if Mr. Main, if there was indeed a Main imposter, then this court would have no jurisdiction over Mr. Main, and he ought not to be sued, because by definition, he didn't do any of the things he's alleged to be doing in the complaint. And as to the remaining defendants, it doesn't affect them at all. So the court was correct in suggesting that it wouldn't have an impact on the court's decision. And in addition, the existence of a Main imposter is something beyond a mild stretch. You know, to send a letter to the State Department without giving the State Department the passport number of the individual you're inquiring about to get back an informal indication that they have no record of the person traveling to the United States, it's double or triple hearsay. And we don't know what investigation was conducted, what they did. We really know nothing. And in opposition to that, we have the declarations of Mr. Lease, Mr. Main, and Mr. Middleton. And the whole premise of this case all along was that it was their conduct that gave rise to the complaint here. I know Your Honor mentioned the jurisdictional issue. We briefed the jurisdictional issue early on, and the court elected to hear the appeal. So we didn't really hear it. It strikes me as kind of odd what they're appealing is. The district court's ruling that he would deny a request for an indicative ruling, and that's all he really did. Yes. So we would have to say, well, he abused his discretion in saying that he would not grant the motion. That just strikes me as odd. I can't put a handle on it yet, but maybe it's OK. Strange. I remember doing it when I was a district judge a couple of times. I was asked for an indicative ruling, and I denied it, and that was it. It went away. Nothing ever happened. Well, we did, in our brief, as we did when it was argued on motion, and we indicated the split among the circuits as to whether it's an appealable order. Because they can always, even after this, let's say we were to affirm, they could always go back and ask the district judge under Rule 60B to open up when jurisdiction is back with the district court. I'm laughing, Your Honor, because we've been here for eight years now. I know. I'm just. If the panel has no further questions, I thank you. I'll try to be brief. I'd just like to come back briefly to the prior decision in the case. I'm sure the court can read it, but I just want to emphasize that the court previously did hold, in 2015, that the LSE and SRA are, quote, formally independent from the government, and then just went on to say that they are accountable to the statutorily created legal services board, and then ultimately concluded that the LSE and SRA engage in a public activity on behalf of the foreign government. So that is the role here, and I just wanted to make that clear, because this is an independent This is an independent body. But more importantly, it's just not enough to say, you work for, you know, they work for the SRA, and then before anything goes, and it's just, we'll leave it to the English courts to determine whether they committed bribery or whatever. That's just not the way this works. If they were committing conduct, their conduct was outside of the authority, of their authority, then they are no longer within the umbrella or under the umbrella of common law immunity. And that's where we keep getting missed. The charge that Mr. Barak was murdering was a charge that he was acting outside the authority of Israel? Well, I mean, right, yes, but exactly, but he was not. That was just it. In that case, he wasn't. And Israel We didn't decide whether he was or whether he wasn't. We decided that whatever his acts were, were clothed with foreign immunity. Well, because he was acting with the authority and in his position, he had the authority to do that. You just contradicted yourself. Let me ask you this. Do you think that Israel authorizes murder by its public officials? No, it's not murder in that situation. Well, that's the point. But it is, I mean, it's the same act, right? And the question of whether it's murder or not depends on whether it's an act of war. And we allow for firing on a vessel when it's necessary for national security, right? We don't allow to call that murder. If he had done it, if he'd been running amok, and he hadn't, but see, here's the difference. If he had just been on his own out there without the authority, happened to be in that position to order it, but wasn't trying to defend the state, wasn't acting with Israel's interest and their ratification, their authorization, but just was doing it on his own, then it would have been murder. Yes, absolutely, would have been murder. And that's what we have here. We have no evidence here that the acts of bribery and intimidation, witness tampering, fraud, everything else that is alleged here were within the authority of these individuals. They weren't acting on behalf of the UK at that point. They were running amok. And I think if you twist this around and say, if we had a government employee here who went overseas, one of our government employees who went overseas and started threatening witnesses and bribing people and doing all sorts of crimes in another country, I don't think we could expect that the other sovereign would grant that person immunity, nor I think would we ask them to. If they're acting outside of their authority, then they should be held accountable for that. They're no longer under that. They can't then claim immunity in the guise of acting on their sovereign, acting on behalf of their sovereign, because they're not at that point. They're just committing misconduct. Even if it is, as Mr. Drick says, run-of-the-mill investigative misconduct. Well, by definition, it doesn't matter whether it's a run-of-the-mill or what it is, it's misconduct. It's outside the authority of the state. Okay, Ms. James. Thank you. Thank you. The matter is submitted.
judges: Paez, Bea, Jack